### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMBER HARP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-19-1138-G |
| ) | |
| WILLIAM P. BARR, United States ) | |
| Attorney General, U.S. DEPARTMENT ) | ATTORNEY LIEN CLAIMED |
| OF JUSTICE, ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, Amber Harp, and hereby pleads her claims as follows:

## PARTIES

1. The Plaintiff is Amber Harp, an adult resident of Cleveland County, Oklahoma.

2. The Defendant is William P. Barr, United States Attorney General, U.S. Department of Justice.

## JURISDICTION AND VENUE

3. The Plaintiff's claims are for disability discrimination, including failure to accommodate and retaliation after Plaintiff requested accommodations, in violation of the federal Rehabilitation Act, 29 U.S.C. § 791, *et seq*. Jurisdiction over the federal claims is vested in this Court pursuant to 28 U.S.C. §1331.

4. The conduct giving rise to these actions occurred in Oklahoma County, Oklahoma, which is a district within the United States District Court for the Western District of Oklahoma. Accordingly, venue is proper in this Court.

## **STATEMENT OF FACTS**

5. The Plaintiff was employed by the Defendant from around 1999 until around April 16, 2016.

6. During all periods of employment, the Plaintiff worked under the title of Warden's Secretary and was located at the FTC Oklahoma City, a facility within the Federal Bureau of Prisons, an agency of the U.S. Department of Justice.

7. During all periods of her employment, the Plaintiff was qualified, with and/or without reasonable accommodation, to perform all essential functions of her job.

8. During all periods of employment where the Plaintiff was allowed to perform her job, she performed satisfactorily.

9. As of May 2014, the Plaintiff had been diagnosed and was undergoing treatment for depression, including Major Depressive Disorder, and related impairments which, without the ameliorative effects of mitigating measures, substantially limit one or more major life activities (including major bodily functions) including (but not limited to), communication, interaction and brain function.

10. Around November 2, 2014, Plaintiff became supervised by John Fox, Warden of FTC Oklahoma City.

11. Mr. Fox replaced Plaintiff's prior supervisor as the new Warden of FTC Oklahoma City.

12. Prior to Mr. Fox becoming Warden, the Plaintiff had been allowed the reasonable accommodations of taking two hours off work each Tuesday to attend therapy as treatment for her medical conditions.

13. In November 2014 the Plaintiff told her new supervisor, John Fox (Warden) of her medical conditions and that she had been allowed to take off work two hours each Tuesday for therapy as treatment for her medical conditions.

14. Plaintiff asked for the reasonable accommodations of being allowed to continue to take two hours off work each week for therapy as treatment for her medical conditions.

15. Warden Fox denied Plaintiff's request for accommodations and refused to allow her to take off work for therapy.

16. Neither Warden Fox nor the Defendant offered the Plaintiff an alternative accommodation.

17. Neither Warden Fox nor the Defendant engaged in an interactive process to determine how the Plaintiff could be reasonably accommodated.

18. Allowing Plaintiff to take off work for two hours each week for therapy was a reasonable accommodation for Plaintiff's medical condition.

19. During Plaintiff's employment Warden Fox also had concerns about how Plaintiff's medical condition would manifest and effect the Plaintiff in the future.

20. After Plaintiff requested accommodations Warden Fox began to retaliate against her including:

    A.    significantly increasing Plaintiff's work-load and requiring Plaintiff to perform tasks within a time period no reasonable person could meet, then criticizing Plaintiff for failing to perform all tasks within these unreasonable deadlines;

    B.    requiring Plaintiff to perform Mr. Fox's personal errands for the sole benefit of Mr. Fox, although Plaintiff was being paid by the federal government, including hanging Mr. Fox's personal pictures and other items on Mr. Fox's wall and unpacking Mr. Fox's personal belongings.

21. Because of the denial of accommodations and retaliation, the Plaintiff's medical condition deteriorated, she took off work on medical leave beginning around May 4, 2015.

22. Plaintiff was forced to take such leave because of the Defendants' refusal to accommodate her medical conditions and/or the Defendants' retaliation after she requested accommodations.

23. Upon taking off work, the Plaintiff was able to obtain treatment for her medical conditions. As a result, her medical condition improved and, beginning around December 31, 2015, she was able to perform all essential functions of her job with reasonable accommodations.

24. Around December 31, 2015, the Plaintiff requested the ability to return to work with accommodations of not having to work around inmates and working in a location away from Mr. Fox's immediate vicinity.

25. During this time the Plaintiff also requested the alternative accommodation of being transferred to another agency within the U.S. Department of Justice.

26. The Defendant denied Plaintiff's requested accommodations.

27. Around February 9, 2016, the Defendant notified Plaintiff that Plaintiff was scheduled to undergo a fitness-for-duty examination on March 1, 2016.

28. Plaintiff underwent the fitness-for-duty examination on March 1, 2016, which was conducted by Dr. Carl B. Pettigrew.

29. On March 4, 2016, Dr. Pettigrew provided the Defendant with the results of the fitness-for-duty examination, which stated that Plaintiff was "fit for duty WITHOUT ACCOMMODATION and is capable of performing all of the job duties of [her] position as described in the job description".

30. The Defendant never provided Plaintiff with a copy of the fitness-for-duty results.

31. Between December 31, 2015 and Plaintiff's last day of employment, the Defendant:

   A.  never offered Plaintiff any accommodation that would allow her to perform the essential functions of her job;

   B.  never told Plaintiff when she would be allowed to return to work; and

   C.  never told Plaintiff that she would have to undergo another fitness-for-duty examination or any other examination prior to returning to work.

32. The Defendant's refusal to allow Plaintiff to return to work resulted in a suspension of about fifty weeks.

33. For approximately eighteen weeks of the leave, the Plaintiff was able to utilize her own paid leave she had accumulated through her employment and/or leave donated from other employees.

34. For about the last thirty-two weeks of her leave the Plaintiff received no income.

35. As further explained in para. 31, above, during the time Plaintiff was receiving no income and not allowed to return to work, the Defendant did not tell Plaintiff when (or if) she would ever be allowed to return to work, under what circumstances (if any) she would be allowed to return to work, or what (if anything) she could do for the Defendant to allow her to return to work.

36. Instead, Plaintiff was forced to remain off work indefinitely and without pay.

37. The Defendant's conduct, including that described above, the Plaintiff was constructively discharged around April 16, 2016.

38. As a direct result of the Defendant's conduct, the Plaintiff has suffered, and continues to suffer, wage loss and associated benefits, as well as emotional distress/dignitary harm including worry, frustration, sadness and similar unpleasant emotions.

39. The Plaintiff has exhausted her administrative remedies by timely making contact with the EEOC office. The U.S. Department of Justice issued a Final Agency Decision on September 25, 2019 and Plaintiff received such decision thereafter. This complaint is timely filed within ninety (90) days of Plaintiff's receipt of the Final Agency Decision.

40. The Defendant discriminated against the Plaintiff on the basis of her having an actual disability, a record of a disability and/or because the Defendant regarded Plaintiff as disabled.

41. Disability discrimination, including in the form of failing to accommodate, disparate treatment, and retaliation, violate the federal Rehabilitation Act.

42. Under the Rehabilitation Act the Plaintiff is entitled to her wage and benefit loss as well as compensatory damages including emotional distress/dignitary harm.

43. Plaintiff is also entitled to an award of attorney fees.

## **PRAYER**

**WHEREFORE**, Plaintiff prays that she be awarded all damages allowed under law together with costs, pre-and post-judgment interest, attorneys' fees and all other relieve this Court deems appropriate.

**RESPECTFULLY SUBMITTED THIS 6th DAY OF DECEMBER 2019.**

s/ Amber L. Hurst
Mark Hammons, OBA #3784
Amber L. Hurst, OBA # 21231
HAMMONS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
(405) 235-6100; (405) 235-6111 (fax)
amber@hammonslaw.com
*Counsel for Plaintiff*
