## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **AMBER HARP,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No. CIV-19-1138-G** |
| | ) |
| **MERRICK B. GARLAND, United** | ) |
| **States Attorney General,** | ) |
| **U.S. Department of Justice,** | ) |
| | ) |
| **Defendant.** | ) |

## <u>ORDER</u>

Plaintiff Amber Harp initiated this action in December 2019, alleging that the Federal Bureau of Prisons ("BOP") failed to accommodate her disability in violation of Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, resulting in her constructive discharge from federal employment. *See* Compl. (Doc. No. 1).[1] Now before the Court is the Motion for Summary Judgment (Doc. No. 20) filed by nominal Defendant Merrick B. Garland, the United States Attorney General. Plaintiff has responded in opposition (Doc. No. 30), Defendant has replied (Doc. No. 34), and Plaintiff has filed a Surreply (Doc. No. 53). For the reasons outlined below, Defendant's Motion is granted in part and denied in part.

---

[1] Though the Complaint makes several references to retaliation, *see* Compl. at 1, 4, 7, Plaintiff asserts in her Response that the references are "merely . . . background factual matter," and that she is not raising a separate claim for retaliation. Pl.'s Resp. at 7 n.1. In view of Plaintiff's representations, the Court deems moot Defendant's request for summary judgment as to a retaliation claim.

I.   FEDERAL RULE OF CIVIL PROCEDURE 56

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

A defendant seeking summary judgment on the basis of an affirmative defense "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."  *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).  "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact" as to one or more elements of the affirmative defense, absent which summary judgment must be granted in favor of the defendant.  *Id.*

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B).  While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

II.    MATERIAL FACTS[2]

Plaintiff was employed from December 1999 to April 2016 as Warden's Secretary at the Federal Transfer Center, Oklahoma City ("FTC").  The FTC is a facility within the Federal Bureau of Prisons ("BOP"), an agency of the U.S. Department of Justice.  In mid-2014, Plaintiff began taking leave from work to attend counseling, with the permission of the warden at the time.  At some point between May 6, 2014, and November 4, 2014, Plaintiff's counselor diagnosed Plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood.  *See* Pl.'s Resp. Ex. 8 (Doc. No. 30-8) at 1.

In November 2014, John Fox became FTC's new warden.  Plaintiff contends that she informed Warden Fox upon his arrival that Plaintiff was suffering from depression due

---

[2] Facts relied upon are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

to the unexpected passing of her sister and that she "need[ed] to continue to go to grief counseling" two hours each week.  Pl. Dep. 19:3-19, Pl.'s Resp. Ex. 3 (Doc. No. 30-3). According to Plaintiff, Warden Fox responded by stating, "I don't like the idea of other departments having to come over and cover for you while you're out.  I need you to be in the office." *Id.* 19:21-24.  Defendant disputes Plaintiff's account of this exchange, pointing to Warden Fox's testimony that Plaintiff never told him she was suffering from depression and never requested his permission to attend such therapy.  *See* Fox Dep. 46:15-47:3, 49:2-51:1, 51:12-52:4, Def.'s Mot. Ex. 3 (Doc. No. 20-3).

Plaintiff initiated contact with an Equal Employment Opportunity ("EEO") counselor on May 4, 2015.  That month, Plaintiff resumed counseling, ceased attending work, and took extended leave from work.  Plaintiff was permitted to use annual and sick leave while she had a leave balance and was provided 40 hours of advanced annual leave. She was also permitted to use leave without pay.

In June or July 2015, Plaintiff was diagnosed with Major Depressive Disorder, Clinical Depression.  Plaintiff testified that she was unable to return to work from May 2015 through December 2015, with or without an accommodation.  On December 31, 2015, Plaintiff emailed the BOP's National Reasonable Accommodation Coordinator, requesting a "transfer to an alternative Department of Justice agency."  Def.'s Mot. Ex. 8 (Doc. No. 20-8) at 3.  That same day, Plaintiff submitted a request to Warden Fox for "an alternative work location" and for leave without pay for the month of January or until reasonable accommodations were arranged.  Def.'s Mot. Ex. 9 (Doc. No. 20-9) at 1.  Plaintiff attached a letter dated December 18, 2015, from her physician Dr. Nagode, who suggested that

Defendant provide Plaintiff "'reasonable accommodations' in a location other than the area which caused the exacerbation of [Plaintiff's] health issues and symptoms" and outside of the presence of inmates.  *Id.* at 3.

On January 13, 2016, FTC Human Resources sent a letter to Dr. Nagode requesting additional information that would allow the agency to "determine whether or not [it] ha[d] an appropriate position to reasonably accommodate [Plaintiff]," including an "explanation of the impact of the medical/psychological condition on life activities both on and off the job."  Def.'s Mot. Ex. 11 (Doc. No. 20-11) at 1-3.  In response, Dr. Nagode submitted a letter dated January 27, 2016, which included the following observations regarding Plaintiff's condition:

> (1) "I do feel as though she is duly capable of the ability and necessity to '*be alert at all times and able to recognize and respond effectively to emergencies.*'"
>
> (2) "Her ability to think clearly and reason definitively is still unbalanced."
>
> (3) "Ms. Harp still continu[es] to have occasional instances of negative effects of Clinical Depression/Major Depressive Disorder . . . ."
>
> -and-
>
> (4) "Mrs. Harp has trouble thinking, concentrating, making decisions and remembering things that might otherwise be routine."

Def.'s Mot. Ex. 3, at 17-21.  Dr. Nagode then restated his recommendation that Plaintiff "be transferred to an outside agency."  *Id.* at 21.

Due to questions raised by Dr. Nagode's letter, Warden Fox directed FTC Human Resources to consult with the FTC's Occupational and Employee Health Branch, which recommended physical and psychological fitness-for-duty examinations.  On March 1, 2016, FTC Human Resources sent Plaintiff a letter stating, "You have . . . requested an

alternate work location.  The agency is evaluating that request.  Please note in the interim, you have been granted [leave without pay] as a reasonable accommodation."  Def.'s Mot. Ex. 19 (Doc. No. 20-19) at 1.  Plaintiff was found to be physically fit for duty, and in March 2016, a search began to recruit a board-certified psychologist or psychiatrist to perform a psychological fitness-for-duty examination.

Plaintiff submitted a letter of resignation to the FTC on April 6, 2016.  She contacted an EEO counselor for the second time on May 9, 2016.

III.  DISCUSSION

Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, prohibits disability discrimination by the federal government against federal employees.  In analyzing a claim brought under § 501, the Court applies the standards from the Americans with Disabilities Act ("ADA"), which prohibits discrimination "against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a); *see Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010); 29 U.S.C. § 791(f).  Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," "unless [the] covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the] covered entity."  42 U.S.C. § 12112(b)(5)(A); *see also Exby-Stolley v. Bd. of Cnty. Comm'rs*, 979 F.3d 784, 794 (10th Cir. 2020) ("The ADA establishes a cause for action for disabled employees whose employers fail to reasonably accommodate them." (emphasis and internal quotation marks omitted)).  A reasonable accommodation may include "job restructuring, part-time or modified work schedules," and "things like adding

ramps . . . or reassigning a disabled employee to a vacant position." 42 U.S.C. § 12111(9)(B); *Sanchez v. U.S. Dep't of Energy*, 870 F.3d 1185, 1195 (10th Cir. 2017) (internal quotation marks omitted).

In this action, Plaintiff advances two alleged instances of Defendant's failure to accommodate her disability: (1) Defendant's refusal to allow Plaintiff to attend therapy two hours each week between November 2014 and May 2015, and (2) Defendant's denial of Plaintiff's December 31, 2015 request for an alternative work location outside of the presence of inmates or a transfer to another agency. *See* Pl.'s Resp. at 31; Compl. at 3-5. Plaintiff additionally contends that rather than voluntarily resigning her position, she was constructively discharged due to Defendant's failure to accommodate. *See* Pl.'s Resp. at 7; Compl. at 2-7.

### A. Failure to Accommodate: Plaintiff's Request to Attend Therapy

#### 1. Administrative Exhaustion

Defendant first argues that Plaintiff failed to exhaust her administrative remedies as to the alleged denial of Plaintiff's request to attend therapy.  "[B]efore a federal civil servant can sue her employer for discrimination or retaliation, she must 'initiate contact' with an Equal Employment Opportunity counselor at her agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (omission, alterations, and internal quotation marks omitted) (quoting 29 C.F.R. § 1614.105(a)(1)).  This "regulatory exhaustion requirement" may be raised by an employer as an affirmative defense. *Id.*[3]

---

[3] Although Defendant's Motion argues that exhaustion is a jurisdictional requirement for suits by federal employees, the Tenth Circuit has specifically rejected that contention. *See,*

To prevail on this affirmative defense, Defendant "must demonstrate that no disputed material fact exists regarding" the failure to exhaust. *Hutchinson*, 105 F.3d at 564. If that burden is met, Plaintiff in order to defeat summary judgment "must then demonstrate with specificity the existence of a disputed material fact" as to one or more elements of the affirmative defense. *Id.*

The parties agree that Plaintiff made two contacts with an EEO counselor—the first on May 4, 2015, and the second on May 9, 2016. Accordingly, Plaintiff must demonstrate that the discriminatory act at issue (Defendant's alleged denial of Plaintiff's request to attend therapy) occurred no earlier than 45 days prior to the EEO contact date of May 4, 2015—i.e., that the denial occurred between March 20, 2015, and May 4, 2015.

In support of her contention that Defendant refused to accommodate her request to attend weekly counseling sessions during the exhaustion period, Plaintiff relies on Warden Fox's alleged statement that he "need[ed] [her] to be in the office." Pl. Dep. 19:21-24. That statement was made in November 2014, however—well prior to the period for which a May 4, 2015 EEO complaint would be timely. *See id.* 19:3-6.

Plaintiff also contends, though, that between November 2014 and May 2015 she "repeatedly requested accommodation of leave to go to therapy, and these accommodations were repeatedly denied." Pl.'s Resp. at 22. As Rule 56 evidentiary support, Plaintiff cites her deposition testimony. *See id.* (citing *id.* at 8-9). In this testimony, Plaintiff averred that, in addition to her November 2014 request, she "continue[d]," "throughout 2015" until

---

*e.g.*, *Cirroco v. McMahon*, 768 F. App'x 854, 857 n.2 (10th Cir. 2019). Nor does 42 U.S.C. § 2000e-16(c) prescribe that "[a]dministrative exhaustion is a condition of the United States' waiver of sovereign immunity," as Defendant claims. Def.'s Mot. at 21.

she took her "long-term leave" (i.e., in May 2015), to "tell [Warden Fox]," via "verbal requests," that she "needed to take off work for therapy or for counseling for [her] depression." Pl. Dep. 88:9-24.  Plaintiff additionally testified that as of July 2015 she was subjected to "hostility in the office" that included "deni[al] of [her] request to take off to attend therapy sessions." *Id.* 88:5-8.

Although "discrete discriminatory acts" that took place prior to the 45-day period "are time barred," Plaintiff may base her claim on acts that occurred within the time period "so long as the acts are independently discriminatory." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).[4]  Viewing the cited testimony and the reasonable inferences therefrom in the light most favorable to Plaintiff, the Court finds that there is a genuine factual dispute as to whether an alleged discriminatory act occurred between March 20, 2015, and May 4, 2015, thereby rendering her EEO contact timely.  *Cf. Hamer v. City of Trinidad*, 924 F.3d 1093, 1103 (10th Cir. 2019) ("[A] public entity repeatedly violates [Title II of the ADA and section 504 of the Rehabilitation Act] each day that it fails to remedy a non-compliant service, program, or activity.  Accordingly, a qualified individual with a disability is excluded from the participation in, denied the benefits of, and subject to discrimination under the service, program, or activity each day that she is deterred from utilizing it due to its non-compliance.").  Therefore, the Court finds that Defendant is not entitled to summary judgment on this claim based on Plaintiff's failure to exhaust administrative remedies.

---

[4] A plaintiff also may "us[e] the prior acts as background evidence in support of a timely claim." *Morgan*, 536 U.S. at 113.

2.  Plaintiff's Prima Facie Case

Defendant next argues that Plaintiff cannot meet the requirements of the "modified *McDonnell Douglas* burden-shifting framework" used to evaluate a failure-to-accommodate claim. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018). Under the first step of that framework, a plaintiff must establish a prima facie case by showing: "1) she was disabled, 2) she was otherwise qualified, 3) she requested a plausibly reasonable accommodation, and 4) the [employer] refused to accommodate her disability." *Aubrey v. Koppes*, 975 F.3d 995, 1005 (10th Cir. 2020). The Tenth Circuit has instructed that establishing this prima facie case "is not onerous." *Id.*

a.  *Whether Plaintiff Was Disabled*

Defendant argues that Plaintiff cannot show the first element of a prima facie case because she cannot show that she was disabled within the meaning of the Rehabilitation Act at the relevant times. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000); *see* 42 U.S.C. § 12102(1)(A)-(C). Plaintiff counters that between November 2014 and May 2015 she qualified as disabled under all three subsections.

i.  Actual Impairment Under 42 U.S.C. § 12102(1)(A)

"[C]onsideration of subsection (A) of the definition proceeds in three steps." *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). First, courts consider whether the plaintiff has a physical or mental impairment. *See id.* Second, they "identify the life activity" upon

which the plaintiff relies and "determine whether it constitutes a major life activity under the [Act]." *Id.* Third, they ask "whether the impairment substantially limited the major life activity." *Id.* "Whether a plaintiff has met the first two requirements [is a] question[] of law for the court. But whether the impairment substantially limits a major life activity is ordinarily a question of fact for the jury." *Sanchez v. Vilsack*, 695 F.3d 1174, 1178 (10th Cir. 2012) (internal quotation marks omitted).

The parties agree that Plaintiff was diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood ("First Impairment") at some point between May 4, 2014, and November 4, 2014, and was diagnosed with Major Depressive Disorder, Clinical Depression ("Second Impairment") in June or July 2015.[5] Both the First and the Second Impairments plainly qualify as mental impairments under the Act. *See* 29 C.F.R. § 1630.2(h)(2) (defining "mental impairment" to include "[a]ny mental or psychological disorder, such as . . . emotional or mental illness").

As to affected life activities, Plaintiff identifies "difficulty sleeping, weight loss, and thoughts of suicide," as well as "concentrating, thinking and working." Pl.'s Resp. at 24. Of these, sleeping, concentrating, thinking, and working are statutorily identified major life activities. *See* 42 U.S.C. § 12102(2)(A).

---

[5] Although Plaintiff was not officially diagnosed with the Second Impairment until June or July of 2015, it is reasonable to consider at least some symptoms and effects of that impairment as having presented prior to that date. *See* Pl.'s Resp. Ex. 7 (Doc. No. 30-7) (Plaintiff's treating physician stating in a letter dated July 21, 2015, that Plaintiff had been seeking treatment for medical issues induced by her work environment and that she had been "suffer[ing] and . . . affected in numerous ways over the past seven months").

To qualify as "substantially limiting" under step three, the impairment must "substantially limit[] the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Pursuant to the governing regulation, the term "substantially limits" must be "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." *Id.* § 1630.2(j)(1)(i). The Court may consider factors, "as compared to most people in the general population," such as: "the condition under which the individual performs the major life activity; the manner in which the individual performs the major life activity; and/or the duration of time it takes the individual to perform the major life activity, or for which the individual can perform the major life activity." *Id.* § 1630.2(j)(4)(i). Although "not every impairment will constitute a disability," "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.* § 1630.2(j)(1)(ii).

At the summary judgment stage, a plaintiff "must point to some evidence showing that her impairment limits her" in this manner. *Sanchez*, 695 F.3d at 1178. "[I]t is not sufficient for a plaintiff to identify an impairment and leave the court to infer that it results in substantial limitations to a major life activity." *Id.* The court's "primary object," however, is to determine "whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." 29 C.F.R. § 1630.2(j)(1)(iii). Accordingly, assessment of this threshold issue "should not demand extensive analysis." *Id.*

With respect to whether Plaintiff's impairments "substantially limited" her major life activities, the applicable regulation suggests that, at least as it implicates the Second Impairment, the Court's finding in the affirmative "should be particularly simple and straightforward." *Id.* § 1630.2(j)(3)(ii) (explaining that "the individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage" under both subsection (A) ("actual disability") and subsection (B) ("record of") and "virtually always be found to impose a substantial limitation on a major life activity"); *see id.* § 1630.2(j)(3)(iii) (prescribing that "it should easily be concluded that" "major depressive disorder" will "substantially limit brain function"). Further, the relevant record indicates Plaintiff was so limited.

With respect to sleeping, Plaintiff cites a May 2014-November 2014 treatment summary from her counselor stating that she had diagnosed Plaintiff with the First Impairment and that Plaintiff had reported "difficulty sleeping." Pl.'s Resp. Ex. 8, at 1. In July 2015, Plaintiff's treating physician Dr. Nagode stated that Plaintiff had been suffering from ailments that included an "inability to sleep and rest regularly." Pl.'s Resp. Ex. 7, at 1. And in her December 31, 2015 BOP accommodation request, Plaintiff also cited an inability to sleep and rest regularly, as well as "consistent nightmares." Def.'s Mot. Ex. 8, at 9, 12.

As to concentrating, thinking, and working, Plaintiff reported to Warden Fox in November 2014 that she "was having difficulty" and "suffering severe depression." Pl. Dep. 19:13-15. Plaintiff testified that while she was working together with Warden Fox from November 2014 to April 2015, her mental-health issues were "exacerbated": she "was

on pins and needles constantly" around Warden Fox and would "throw up" before work, "get sick at work," and "get sick after work." Pl. Dep. 39:25-41:2. Dr. Nagode's July 2015 letter noted Plaintiff's "mood swings and inability to make rational and coherent decisions," as well as her work-related stress "over the past seven months," and ordered that Plaintiff continue to remain off work. Pl.'s Resp. Ex. 7, at 1, 2. And Plaintiff stated in her BOP accommodation request that Warden Fox's actions after he began working at the FTC were "distressing" to the extent that they "[d]aily" "interfered with [her] ability to perform [her] job to the best of [her] capacity." Def.'s Mot. Ex. 8, at 7.

Performing an "individualized assessment" as required, the Court concludes that Plaintiff has sufficiently established that her impairments "substantially limited" one or more of her major life activities. 29 C.F.R. § 1630.2(j)(1)(iv); *see also id.* § 1630.2(j)(1)(v) (prescribing that the comparison of the plaintiff's performance of a major life activity to the performance by most people in the general population "usually will not require scientific, medical, or statistical analysis"); § 1603.2(j)(1)(vi) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures.").

Considering the evidence in the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has set forth evidence demonstrating a triable factual issue as to whether she was "actually disabled" under § 12102(1)(A), as required to proceed on this claim.

ii.     Record of Impairment Under 42 U.S.C. § 12102(1)(B)

Plaintiff also contends that she meets the definition of disability due to having "a record of . . . an impairment" under 42 U.S.C. § 12102(1)(B).  42 U.S.C. § 12102(1)(B). To satisfy subsection (B), "a plaintiff must have a history of, or been misclassified as having, an impairment that substantially limited a major life activity."  *Sorensen v. Univ. of Utah Hosp.*, 194 F.3d 1084, 1087 (10th Cir. 1999).  "Whether an individual has a record of an impairment that substantially limited a major life activity shall be construed broadly . . . and should not demand extensive analysis."  29 C.F.R. § 1630.2(k)(2); *see also id.* § 1630.2(j)(3)(ii)-(iii).

As noted above, Plaintiff has presented medical documentation of her First and Second Impairments, including a description by medical personnel of the effects of these impairments, and has sufficiently established that they limited one or more of her major life activities.  Accordingly, the Court concludes that Plaintiff has raised a triable fact issue as to whether she was disabled due to having "a record of" a qualifying impairment under subsection (B).

iii.     Perceived Impairment Under 42 U.S.C. § 12102(1)(C)

Plaintiff additionally cites 42 U.S.C. § 12102(1)(C) as a basis for finding she was disabled.  Under this subsection, "disability" also extends to an individual "being regarded as having" a physical or mental impairment.  42 U.S.C. § 12012(1)(C).  An individual meets the definition of subsection (C) if the individual establishes that she has been subjected to a prohibited action "because of an actual or perceived physical or mental

impairment," "whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A).

In support of her assertion that Defendant regarded her as disabled, Plaintiff points to Warden Fox's concerns regarding mental-health accommodations and Defendant's request for a psychological examination. *See* Pl.'s Resp. at 25-26. The relevant testimony and evidence, however, reflects that the cited concerns and request arose from the BOP's receipt of Plaintiff's December 31, 2015 request for reasonable accommodation. *See, e.g.*, Fox Dep. 73:19-75:18. Lacking further connection to the relevant November 2014-May 2015 time frame of Plaintiff's failure-to-accommodate claim regarding therapy leave, Plaintiff cannot show that she was disabled under the subsection (C) "regarded as" definition for purposes of that claim.

### b. *Other Elements of the Prima Facie Case*

With respect to the remainder of Plaintiff's prima facie case, Defendant does not dispute that Plaintiff "was otherwise qualified" or that her request for leave to attend therapy for a single two-hour session each week was "a plausibly reasonable accommodation." *Aubrey*, 975 F.3d at 1005; *see* Def.'s Mot. at 25-26, 31-32; Def.'s Reply at 5; *see also* 42 U.S.C. § 12111(9)(B) (citing "part-time or modified work schedules" as a possible reasonable accommodation); *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002) (noting that at summary judgment the plaintiff "need only show that an 'accommodation' seems reasonable on its face").

And, as discussed above, Plaintiff testified that Warden Fox responded to her expressed need to attend grief counseling for her depression by stating, "I need you to be

in the office." Pl. Dep. 19:11-24.  Plaintiff also has testified via sworn affidavit that she "was required to obtain permission in order to take leave" and that Warden Fox "denied her request." Pl. Aff. ¶ 10, Pl.'s Resp. Ex. 2 (Doc. No. 30-2).  A reasonable jury could therefore find that Defendant had "adequate notice" of Plaintiff's request for a plausibly reasonable accommodation but that Defendant "refused to accommodate her disability." *Exby-Stolley*, 979 F.3d at 795; *Aubrey*, 975 F.3d at 1005; *see also Exby-Stolley*, 979 F.3d at 797 ("[O]nce an employee makes an adequate request for an accommodation, . . . an employer's failure to offer a reasonable accommodation to an otherwise qualified disabled employee is unlawful discrimination—irrespective of whether the employer harbored invidious intent (or discriminatory animus) toward the employee when the employer failed to act." (alterations and internal quotation marks omitted)).

Plaintiff has therefore sufficiently established her prima facie case of disability discrimination as to her request for leave from work to attend therapy and Defendant's denial of that request.

### 3. Defendant's Burden

Because Plaintiff has made the requisite showing of her prima facie case, the burden of production "shifts to [Defendant] to present evidence" that either "establish[es] an affirmative defense" or "conclusively rebut[s] one or more elements of [Plaintiff's] prima facie case." *Lincoln*, 900 F.3d at 1204 (internal quotation marks omitted).

Defendant cites no affirmative defense, such as undue hardship.  *See generally Exby-Stolley*, 979 F.3d at 821-22.  Defendant instead attacks Plaintiff's prima facie case by contending that it "did not deny any request for leave submitted by Plaintiff." Def.'s Mot.

at 31; *see also* Def.'s Reply at 3-4.  Considering Warden Fox's testimony to this effect, the Court finds that Defendant has fulfilled its summary-judgment burden.  *See* Fox Dep. 46:16-47:3 (Warden Fox testifying that Plaintiff never told him she was suffering from depression and suicidal thoughts), 49:2-51:23 (Warden Fox denying that Plaintiff asked to go to grief counseling and that he told her she needed to be at work).  Stated differently, the Court finds that Defendant has produced evidence that would, if believed, rebut Plaintiff's assertion that Defendant refused her requested accommodation.

### 4. Plaintiff's Reply to Defendant's Challenge

The burden then reverts to Plaintiff to "present evidence . . . rehabilitat[ing] any challenged elements of . . . her prima face case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017) (second omission in original) (internal quotation marks omitted).

Plaintiff contends that the issue of whether she requested permission to attend counseling each week and was denied that leave by Defendant is genuinely disputed, with Plaintiff stating that she did and Warden Fox stating that she did not.  "On summary judgment, a district court may not weigh the credibility of the witnesses." *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).  Further, Plaintiff need not prove that Defendant harbored "any particular intent" when breaching its obligation to make a reasonable accommodation.  *Exby-Stolley*, 979 F.3d at 797.

In view of the contradictory testimony on this point, and there being no documentary evidence conclusively establishing the truth of either view, the Court determines that

Plaintiff has sufficiently "rehabilitated" her prima facie case and has shown a genuine dispute as to whether Defendant refused to accommodate her disability.

    5. <u>Conclusion</u>

  Having considered the parties' argument and the relevant record, the Court finds that "there remains genuine evidence supporting each element of [Plaintiff's] prima facie case," and, therefore, "summary judgment for [Defendant] should be denied" as to Plaintiff's failure-to-accommodate claim based upon a denial of leave to attend therapy. *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999).

   B. *Failure to Accommodate: Plaintiff's Request for Alternative Work Location or Transfer*

  Defendant also challenges Plaintiff's claim that Defendant discriminated against Plaintiff by denying her December 31, 2015 request for accommodation in the form of an alternative work location outside of the presence of inmates or a transfer to another agency within the U.S. Department of Justice.  *See* Pl.'s Resp. at 31; Compl. at 3-5.  As to this failure-to-accommodate claim, Defendant contends that Plaintiff's evidence is not sufficient to show the fourth element of the prima facie case, that Defendant "refused to accommodate her disability."  *Aubrey*, 975 F.3d at 1005.  Specifically, Defendant argues that it was still investigating Plaintiff's December 31, 2015 request for an alternative work location at the time Plaintiff resigned from the BOP, and therefore Defendant never refused to accommodate her disability by denying that request.

  When a federal agency receives a request for accommodation, it is obliged to engage in an "interactive process" envisioned by federal regulations.  *Wilkerson*, 606 F.3d at 1266 (describing interaction between employer and employee as an "essential component of the

process by which a reasonable accommodation can be determined" (internal quotation marks omitted); *see* 29 C.F.R. § 1630.2(*o*)(3).   Accordingly, once the BOP received Plaintiff's December 31, 2015 request for accommodation, it was required to engage with Plaintiff "to identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 916 (10th Cir. 2004) (internal quotation marks omitted).

There is no dispute that, pursuant to this obligation, Defendant corresponded with Plaintiff, consulted with its Occupational and Employee Health Branch, scheduled a physical fitness-for-duty examination with Plaintiff, and searched for a *certified* psychologist or certified psychiatrist to perform a psychological fitness-for-duty examination until the date of Plaintiff's resignation on April 6, 2016.   Plaintiff complains, however, that Defendant should not have "[held] out for an evaluator who was board certified" because "board certification is not an accepted requirement under the statute." Pl.'s Resp. at 33-34 (emphasis omitted).   Plaintiff contends that Defendant's insistence on certification and the resulting delay are evidence that Defendant did not engage in the interactive process in good faith.

Defendant has presented testimony explaining that the FTC "require[d] that all [their] fit for duties [be] performed by board certif[ied] individuals" to ensure reliable results.   Cohen Dep. 103:12-104:3, Def.'s Mot. Ex. 10 (Doc. No. 20-10).   Further undermining Plaintiff's contention of bad faith is that Plaintiff contemporaneously sent a resignation letter to the FTC that did not reference any dissatisfaction with Defendant's response to her request for accommodation.   *See* Def.'s Mot. Ex. 2 (Doc. No. 20-2) at 2

(Plaintiff stating she was resigning because she had accepted a position with the Federal Aviation Administration and felt it was "time for [her] to further [her] career opportunities and advancement while seeing [her] federal service come to fruition").   Even viewed in Plaintiff's favor, the evidence does not create a genuine factual dispute as to whether Defendant failed to participate in the interactive process in good faith or ended the process prior to Plaintiff's resignation.   *Cf. Smith*, 180 F.3d at 1173 ("The exact shape of [the] interactive dialogue will necessarily vary from situation to situation and no rules of universal application can be articulated.").   Rather, the evidence most reasonably reflects that Plaintiff ended the interactive process through her resignation from the FTC.

Accordingly, a reasonable jury could not conclude that Defendant denied Plaintiff's December 31, 2015 request for accommodation.   Because Plaintiff cannot establish her prima facie case, Defendant is entitled to summary judgment on this claim.

   *C.   Constructive Discharge*

Plaintiff also claims that she was constructively discharged from her employment with Defendant.   "Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."   *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 534 (10th Cir. 1998) (internal quotation marks omitted).

Plaintiff bases this claim, however, upon the allegedly intolerable conditions imposed upon her due to (i) Defendant's failure to permit Plaintiff to work in an alternative location or to transfer and (ii) Defendant's actions following Plaintiff's submission of that request on December 31, 2015.   *See* Pl.'s Resp. at 40-41.   The Court has already determined

that Defendant is entitled to summary judgment as to Plaintiff's claim that Defendant failed to provide a reasonable accommodation for her disabilities with respect to these requests. A claim for constructive discharge based on this alleged discriminatory conduct likewise fails. *See Sanchez*, 164 F.3d at 534; *Wells v. Shalala*, 228 F.3d 1137, 1146 (10th Cir. 2000) ("[The defendant] did not illegally discriminate against [the plaintiff] by failing to reasonably accommodate his disability. Accordingly, [the plaintiff's] constructive discharge claim based on disability discrimination necessarily fails.").[6]

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 20) is GRANTED IN PART AND DENIED IN PART. Specifically:

1. Defendant is not entitled to summary judgment on Plaintiff's failure-to-accommodate claim based upon requests to attend therapy;

2. Defendant is entitled to summary judgment on Plaintiff's failure-to-accommodate claim based upon requests for alternative work location or transfer; and

3. Defendant is entitled to summary judgment on Plaintiff's constructive discharge claim.

Judgment shall be entered for Defendant on the latter two claims at the conclusion of this litigation.

A scheduling order and trial docket shall be entered separately as to Plaintiff's remaining claim.

---

[6] Plaintiff does not argue that Defendant's November 2014-May 2015 failure to accommodate her request to attend therapy created intolerable working conditions amounting to a constructive discharge, and thus she fails to show a jury question as to any such claim.

IT IS SO ORDERED this 31st day of March, 2022.

CHARLES B. GOODWIN
United States District Judge